UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SOON AE YI,

              Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

              Defendant.

CASE NO. 2:16-cv-00923 JRC

ORDER ON PLAINTIFF'S COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 16, 17).

      Plaintiff suffers from the single severe impairment of affective disorder, a finding not challenged by plaintiff. An examining doctor indicated that plaintiff's depressive

symptoms resulted from the situational stressor of being left by her husband for another woman, an especially embarrassing situation for cultural Koreans. Plaintiff contends that the ALJ erred by failing to credit fully the opinions from this doctor regarding plaintiff's limitations. However, in order for limitations to be "disabling" as defined by the Social Security Act, they must result from medical impairments, not from situational stressors.

Therefore, for this as well as other discussed reasons, and based on consideration and review of the record as a whole, the Court concludes that the ALJ did not commit any harmful legal error when evaluating plaintiff's application for social security benefits.

The ALJ's decision is affirmed.

## BACKGROUND

Plaintiff, SOON AE YI, was born in 1953 and was 56 years old on the alleged date of disability onset of May 31, 2010. *See* AR. 191-92, 194-203. Plaintiff graduated from high school in Korea. AR. 35. Plaintiff has work history in their family businesses, including a deli store, grocery store and restaurant. AR. 36. She was last employed as a caretaker. AR. 36.

According to the ALJ, plaintiff has the severe impairment of "Affective disorder (20CFR 404.1520(c) and 416.920(c))." AR. 16.

At the time of the hearing, plaintiff was living with her son and daughter-in-law. AR. 45.

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 69, 70, 95, 96. Plaintiff's requested hearing was held before Administrative Law Judge Virginia M. Robinson ("the ALJ") on August 8, 2014. *See* AR. 29-68. On January 27, 2015, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act. AR. 11-28.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ erred in failing to consider properly the opinions of the examining provider in the record and in failing to provide adequate explanation for not according those opinions more weight; (2) Whether the ALJ erred in finding that the plaintiff could perform work that allowed incidental contact with the public; (3) Whether the ALJ erred in failing to provide legitimate reasons supported by the record for her finding on credibility; and (4) Whether the ALJ erred in failing to order a consultative examination and in failing to explain why she did not order a consultative examination. *See* Dkt. 11, p. 2.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

//

//

//

DISCUSSION

**(1) Whether the ALJ erred in failing to consider properly the opinions of the examining provider in the record and in failing to provide adequate explanation for not according those opinions more weight.**

Plaintiff contends that the ALJ erred when evaluating the opinion from examining doctor, Dr. Christiana Diamonti, Psy.D. *See* Dkt. 11, pp. 4-10. Defendant contends that there is no error, noting that the ALJ based her failure to credit fully the opinions of Dr. Diamonti on multiple reasons, including that Dr. Diamonti's assessments are inconsistent with plaintiff's self-reported activities, such as international travel, social functioning, and ability to do chores and self-care (AR. 19, 20-21, 339, 343); and that "Dr. Diamonti acknowledged the claimant's situational stress of marital problems and cultural stigma as a barrier to seeking treatment [and that such] stress is not based on medical disability." Dkt. 16, pp. 3-9; AR. 21 (citing AR. 345).

When an examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Diamonti's opinions are contradicted by the record and by other medical opinions. *See, e.g.*, AR. 21. The ALJ discussed the examinations and opinions of Dr.

Diamonti, and accorded them "little weight." AR. 20-21. This discussion by the ALJ was in the middle of a relatively thorough summary of the facts and conflicting evidence. *See* AR. 19-22. For example, when failing to credit fully Dr. Diamonti's opinions, the ALJ noted that "Dr. Diamonti acknowledged the claimant's situational stress of marital problems and cultural stigma as a barrier to seeking treatment, [and the ALJ found that such] stress is not based on medical disability." AR. 21 (citing AR. 345). This is based on substantial evidence in the record as a whole. *See* AR. 21, 345. Not only did Dr. Diamonti acknowledge this fact (AR. 345), but also, Dr. George Lee, M.D. "specifically recorded that 'since May 2010 [the claimant] stopped working due to personal reasons' that were [] related [to her marriage]," as noted by the ALJ. *See* AR. 20 (citing AR. 371 ("since May 2010 she stopped working due to personal reasons when her husband abandoned her and she had to live with her son, Will. She started being depressed at that time . . . .").

In addition, the ALJ found that "situational stress is a factor that can reasonably exacerbate the existing depressive symptoms, but such stress is considered transient in nature and not permanently disabling." AR. 20. Noting plaintiff's desire to pursue a divorce, the ALJ noted that "the situational stress as experienced by the claimant can be emotionally devastating, but under the definition of the regulations, the psychological ramifications cannot be the basis on which to award disability benefits." *Id.* If a claimant suffers from limitations that are transient and result from situational life changes, as opposed to resulting from a medical impairment, such rationale entails a specific and

legitimate reason for failing to include such limitations in a residual functional capacity ("RFC") assessment when determining if the claimant is disabled.

It is the medical impairment that must prevent performance of substantial gainful activity, not situational factors, such as job losses, economic issues, or marital problems; and any impairment that does not last continuously for twelve months does not satisfy the requirement. *See* 42 U.S.C. §§ 423(d)(1)(A):

> '[D]isability' means inability to engage in substantial gainful activity *by reason of* any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous* period of not less than 12 months; or . . . .

42 U.S.C. § 423(d)(1)(A) (emphases added).

Therefore, here, the question becomes whether the ALJ's finding that plaintiff's limitations result from transient and personal life situations is based on substantial evidence in the record as a whole, which here, it appears to be.

As noted, Dr. Diamonti acknowledged the fact that "the stigma attached to the precipitating events to her depression [her husband's gambling and resultant losses, as well as his leaving her for another woman] have isolated [plaintiff] and inhibited her from seeking any sort of counseling or therapy," [noting that plaintiff] stated that for Korean women, if a husband leaves her for another woman, she is thought to be at fault, and great shame is brought upon her and her family. *For that reason*, [plaintiff] has withdrawn from her community . . . ." AR. 345; *see also* AR. 341. Dr. Diamonti subsequently specified that plaintiff "was very reluctant to consult with the therapist again because of

the shame associated with the reason for her depressive symptoms." AR. 345. The only way to rationally interpret this comment from Dr. Diamonti is that "the reason for her depressive symptoms," which, for plaintiff is associated with shame, is the fact that plaintiff's husband left her for another woman. *See id.* To wit, if "the reason for her depressive symptoms" is her situation regarding her marriage, the reason for plaintiff's depressive symptoms is not her medical impairment. *See* 42 U.S.C. § 423(d)(1)(A). Dr. Diamonti additionally noted that in "the past, [plaintiff] has been able to successfully run a business and was employed as an elderly caregiver; however, since the loss of her husband and exile from her community, she has become increasingly isolated, overwhelmed by feelings of sadness, apathy, and loneliness." AR. 339. Similarly, according to plaintiff's testimony, plaintiff worked a business with her husband for "12 years without any rest or break since she arrived in the United States," but, after her "husband started gambling in casino . . . . And then he had an affair with [an] other woman . . . . [and] left; so, after that, she had emotional problem." AR. 40. Similarly, Dr. George Lee, M.D. "specifically recorded that 'since May 2010 [the claimant] stopped working due to personal reasons' that were [] related [to her marriage]," as noted by the ALJ. *See* AR. 20 (citing AR. 371 ("since May 2010 she stopped working due to personal reasons when her husband abandoned her and she had to live with her son, Will. She started being depressed at that time . . . .").

Indeed, approximately a month after the first assessment from Dr. Diamonti, in which she wrote that plaintiff had presented as markedly depressed (AR. 339), plaintiff was seen by Dr. Timothy F. Timmons, D.O., plaintiff's primary care physician. Dr.

Timmons' clinical notes from August 18, 2012 reveal that he screened plaintiff for risk of depression by asking her if over the previous two weeks she had felt down, depressed, or hopeless; and if over the previous two weeks she had felt little interest or pleasure in doing things. AR. 321. Plaintiff responded in the negative to both questions. Therefore, despite Dr. Diamonti's assessment on July 3, 2012, that plaintiff was markedly depressed, on August 18, 2012, plaintiff reported that she had not felt down or depressed in the previous two weeks. AR. 321, 339. For the reasons stated, and based on the record as a whole, the Court concludes that the ALJ's finding that plaintiff's limitations resulted largely from situational stressors and were "transient in nature and not permanently disabling" (AR. 20) is a finding based on substantial evidence in the record as a whole and entails specific and legitimate rationale, in the context of the ALJ's discussion of the medical evidence in record, for the ALJ's failure to credit fully Dr. Diamonti's opinions. In addition, although Dr. Timmons reported on August 18, 2012 that plaintiff described her mood and affect as depressed and sad, her "neurologic evaluation reveals - normal attention span and ability to concentrate, normal sensation and normal coordination." AR. 322. Therefore, even if plaintiff still was suffering from some depression approximately a month after the evaluation from Dr. Diamonti, she nevertheless demonstrated normal attention span and ability to concentrate. *See id.* Subsequently, on February 22, 2013, plaintiff's "mood and affect [were] described as - normal." AR. 319. At this appointment, plaintiff reported "feeling well and stable on current dosage of Prozac." AR. 320. Also providing some support for the situational and transient nature of her symptomatology, in

May, 2014, Dr. Lee noted that plaintiff, at that later date, was "much better now." AR. 371.

For the reasons discussed and based on the record as a whole, Court concludes that the ALJ did not err when resolving the conflicting medical evidence and that the ALJ provided specific and legitimate rationale based on substantial evidence in the record as a whole when she failed to credit fully the medical opinions of Dr. Diamonti.

**(2) Whether the ALJ erred in finding that the plaintiff could perform work that allowed incidental contact with the public.**

Plaintiff contends that the ALJ erred when concluding in the residual functional capacity ("RFC") assessment that plaintiff could have "incidental interaction with the public" (AR. 18), because this assessment conflicts with the opinion from a state agency medical consultant that plaintiff "should not work with the public." AR. 118. Defendant contends that the ALJ appropriately accounted for the opinion that plaintiff should not work with the public, because incidental contact with the public does not require plaintiff "to 'work with' the public." *See* Dkt. 16, pp. 9-10. Defendant's argument is persuasive.

The record reflects that although the state agency doctor opined that plaintiff "should not work with the public," he did not opine that she could not have any incidental contact with the public. *See* AR. 118. This interpretation of the record is substantiated by the sentence immediately preceding the one quoted, in which the state agency doctor specifies that plaintiff "can engage in tasks that have limited interpersonal requirements." *Id.* The ALJ's translation of this opinion into a specific limitation in the RFC is reasonable and supported by substantial evidence in the record. The Court finds no error.

**(3) Whether the ALJ erred in failing to provide legitimate reasons supported by the record for her failure to credit fully plaintiff's allegations and testimony**.

Plaintiff contends that the ALJ erred when failing to credit fully plaintiff's allegations and testimony. Defendant contends that there is no error.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).

In this matter, the ALJ provided a relatively thorough evaluation of the record when failing to credit fully plaintiff's allegations and testimony. AR. 19-20. For example, the ALJ noted as follows:

> Despite allegations of severe affective disorder, to a degree that is disabling, the claimant testified that she has traveled from the United States to Korea, where she stayed for about 10 months from June 2010 to March 2011. During that time, she was staying with family (internal citation to hearing testimony). She did not indicate having any social difficulty while staying with family members even while she was away from home for a prolonged period of time. Back in the United States, the claimant is currently living with her daughter, son, and daughter-in-law. There is also no mention of any difficulty getting along with these family members (internal citation to hearing testimony). In a report of communication, a DSHS staff member notated that when the claimant was contacted by phone on March 21, 2012, the claimant's daughter stated that the claimant was "in California now" and her stay has been "going on to three months" (internal citation to AR. 314). The claimant's international travel to Korea and domestic travel to California during the period of alleged disability contravene her allegations.

AR. 19. Although it certainly is the case that significant travel is not inconsistent with disability in general, here, plaintiff specifically alleges affective disorder so severe, associated with social withdrawal, that she is disabled. Travel requires at least some amount of social interaction, including with the public at the airport, with airline employees, and with fellow passengers on the plane, especially international travel on a long trans-oceanic flight.  Similarly, staying with family members or friends during prolonged periods of time, including three months or ten months, also requires some social interaction The Court concludes that the ALJ's finding that plaintiff's allegations of severe affective disorder and disabling social withdraw are inconsistent with her multiple and prolonged travel excursions is a finding based on substantial evidence in the record

as a whole and provides some support for the ALJ's failure to credit fully plaintiff's testimony regarding the extent of her limitations. Similarly, the ALJ also noted that plaintiff "reported attending organized religious activities 'every Sunday.'" AR. 19 (citing AR. 362). This finding, too, is supported by substantial evidence in the record and conflicts with plaintiff's alleged disabling social withdraw. *See* AR. 362.

The ALJ also noted that plaintiff "alleged vomiting, even after eating a small amount of food, usually once a week." AR. 19. However, as noted by the ALJ, when plaintiff "went to a wellness visit on August 24, 2013 she reported 'her current diet includes well-balanced meals,' that she was 'not concerned about weight,' and that she takes dietary supplements that include 'daily multivitamins and calcium.'" *Id*. (citing AR. 347). This treatment note also indicates that plaintiff reported that her general health since her last visit was "good." *Id*. The ALJ also noted that at her wellness visit, Dr. Timmons "recorded that the claimant appeared 'Well nourished and well developed.'" AR. 20 (citing AR. 348). Based on the record as a whole, the Court concludes that the ALJ's finding of an inconsistency between plaintiff's allegations of vomiting even after eating a small amount of food usually once a week, and the reports in the medical record that she was not concerned about her weight and was well-nourished and well-developed is a finding based on substantial evidence. *See* AR. 41 ("Usually once a week"). The Court also concludes that this finding, too, supports the ALJ's failure to credit fully plaintiff's allegations regarding the extent of her limitations. Plaintiff argues that the ALJ failed to evaluate appropriately the contentions of plaintiff and her daughter-in-law that when plaintiff is having difficulty eating and is vomiting whatever she takes in, that this

physical condition lasts for days, but that these symptoms are not argued to be constant. However, the ALJ noted that plaintiff alleged that this difficulty eating associated with vomiting usually occurs every week, and if it lasts "for days" every week, this would result in this symptomatology occurring approximately 30-50 percent of time, probably even more, as plaintiff's testimony indicates that this lasts "sometimes three days, or sometimes up to five days." AR. 41; *see also* Dkt. 17, p. 5 (citing AR. 271). As already concluded, such alleged symptoms are inconsistent with plaintiff's report that she does not have any concern about her weight and inconsistent with the doctor's observation that plaintiff was well-nourished and well-developed.

For the reasons stated, and based on the record as a whole, the Court concludes that the ALJ offered clear and convincing reasons for failing to credit fully plaintiff's allegations and testimony regarding extent her limitations resulting from her medical impairment of affective disorder. Therefore, even if not all of the reasons offered by the ALJ were supportive of her decision to not credit fully plaintiff's testimony, any error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record") (citations omitted).

**(4) Whether the ALJ erred in failing to order a consultative examination and in failing to explain why she did not order a consultative examination.**

Plaintiff alleges that the ALJ erred by failing to order a consultative examination of plaintiff and by failing to explain why she did not do so. Plaintiff's argument is based

on the ALJ's duty to develop the record. *See* Dkt. 11, pp. 14-16 (actual brief pages 15-16, due to faulty numbering of pages in the opening brief). Defendant contends that the ALJ did not have a duty to order a consultative examination because the medical record was neither inadequate nor ambiguous as to plaintiff's alleged mental impairments. Dkt. 16, p. 16. Defendant's argument is persuasive.

The ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (citing *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).

Plaintiff argues that because the ALJ did not give full weight to the opinions of treating and examining doctors, but instead relied on medical consultants, that the ALJ had a duty to order a consultative examination, but plaintiff does not cite any case law supporting this interpretation of the ALJ's duty to develop the record. Defendant argues that an ALJ "'has broad latitude in ordering a consultative examination,'" and notes that the duty to develop the record is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Dkt. 16, p.

16 (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)). Again, defendant's argument is persuasive. Plaintiff has not demonstrated the existence of ambiguous evidence or that the record is inadequate. Defendant also points out that claimants have "the burden of providing medical and other evidence that support[] the impact [their] impairment had on [their] ability to work." *Id.* (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).

Plaintiff also argues that the duty to develop the record was triggered because the ALJ failed to include the limitations opined by the medical consultants regarding plaintiff's ability to interact with the public into plaintiff's RFC. However, the Court already has discussed this argument, *see supra*, section 2, and has found it unpersuasive.

CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** is for defendant and the case should be closed.

Dated this 19th day of June, 2017.

J. Richard Creatura
United States Magistrate Judge